United States District Court **-FILED-**
Northern District of Indiana

Hammond Division

DEC 04 2020

At_____M
ROBERT N. ~~~ JVICH, Clerk
U.S. DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

United States of America

V.

Larry Smith

No. 2:05 CR 179

### Motion for Reconsideration
### for Compassionate Release

I am filing this motion for reconsideration for compassionate release in response to the courts order dated November 4, 2020.

Before getting into my reasoning as to why the courts should reconsider, and in doing so grant, my motion, I would like to address the fact that I was not given the due process of law entitled to me before the court ordered my first motion for compassionate release be denied. Since I never received the response from the government in opposition to my motion, I was not given the opportunity to file a response to said opposition before the courts ruling dated on November 4, 2020.

The first reason in the order denying my motion

was that I did not exhaust my administrative remedy. The fact that the exhaustion period had elapsed by the time of the November 4, 2020 ruling aside, as of this filing, dated November 24, 2020, it has been 130 days since July 18, 2020, when I requested compassionate release from Warden Moser at FCI Loretto. The exhaustion period of 30-days has now surely lapsed.

The other reason I am responding to, that the court denied my motion, pertains to the COVID-19 pandemic, stating that it does not justify compassionate release, "as it appears that the virus has been effectively controlled at his facility". Also stating "While the Court is sympathetic to Smith's situation and concern about potentially becoming infected with COVID-19".

The virus has not been effectively controlled at FCI Loretto, as we presently have an outbreak at the institution. And unlike last time, which remained on one unit and still saw 61 inmates (some of which had been released prior to the courts ruling on November 4, 2020, leaving 55 on the website) and 11 staff members get infected, this time around, there have been inmates tested positive on every unit in the institution. Placing me at risk once again.

In my first filing on August 4, 2020, I sent an

amendment to my motion in the same envelope as my motion addressing the fact that I had tested positive for COVID-19 and was placed in quarantine.

That amendment read as follows:

"While waiting for mail pick-up to come around so I could send this motion in to the courts, my room was removed from the unit and placed in quarantine. Four out of eight tested positive for COVID-19, including me. Besides us, 21 other inmates tested positive today, bringing the total up to 53 inmates thus far since the first tested positive on the 18th of July, with more test results still pending.

My lab results from the first test I took on the 20th of July came back negative. So between then and now, I contracted the virus. Possibly from the individuals allowed to return to the unit while still positive. I have been placed in the unit for confirmed positives with 31 other inmates.

The conditions in this unit are inadequate, to say the least. There are only two sinks, one urinal, and two toilets — due to the third being broken. — There is no officer stationed on the unit and no emergency call button or phone to reach out to medical if an issue

should arise with one of us infected individuals. The officer makes rounds hourly.

Also, upon arriving in this "quarantine" unit, we were informed we would receive bedrolls, clothing, and hygiene supplies shortly. Eight to ten hours later, we received two blankets a piece. No clothing, No Hygiene, No linen, No towel or wash rag to wash with. We were told two blankets was the best that could be done on short notice because there was no clean items inside laundry. No hygiene kits or bedrolls made-up. Nothing in preparation for handling more COVID-19 positive cases. The information given to us was "Somebody dropped the ball."

There has been no less than 3 weeks to prepare for this situation, since the first staff member tested positive, and more like 5 months, when Phase One was issued by the BOP. There is no reason administration should not have at least the bare minimum of blankets, linen, hygiene, towels, and wash clothes ready for if and when the pandemic reaches within their walls.

Today has been more proof that FCI Loretto can not contain this virus from spreading and can not properly manage and care for the sick individuals infected with the virus. Nobody at FCI Loretto was handed a

—4—

death sentence but it seems the administration is attempting to deal one out to one or more individuals by neglecting to prepare themselves or their institution for an outbreak."

Within the order dated November 4, 2020, there is no mention of anything pertaining to my amendment, in fact making a statement of me "potentially becoming infected", which opens the question as to whether the courts either,

1) Never received that amendment or ;

2) Neglected to take into consideration the important facts that I have been infected and the condition in which FCI Loretto is handling the infected and sick individuals.

The writing of that amendment was day one of my quarantine. I ended up spending 16 days in quarantine before being deemed "recovered" and sent back to my unit. We were not allowed to take anything with us and, during that time, nobody within the quarantine unit was given any change of clothes, some of which spent 30 days in quarantine. I only received two rolls of toilet paper in that 16 days and didn't receive any hygiene until the ninth day. Needless to say, it was not a very clean environment to be in, especially when dealing with COVID-19 infected individuals.

Besides the negligent manner in which they treated us pertaining to clothing, hygiene, and over-all sanitation, the complete disregard for our health or lives cannot be ignored. On the third or fourth day of my quarantine, after staff had an issue in the unit housing non-infected inmates over assigned bedding, they proceeded to enter the infected quarantine unit, with pepper spray cans in hand, safety pins pulled, walking up and down the hall threatening to spray people suffering respiratory complications from COVID-19, if they were not in their assigned beds.

Everyone in our unit was in their assigned cells/bunk, there was no report of any issue in our unit, yet the administration (compound officers, lieutenants, and the acting captain) chose to threaten sick individuals with the use of what would amount to deadly force, when you combine the effects of pepper spray and the complications with breathing from COVID-19 infections. Showing this institution, is not equipped with the right mind set to keep people safe from infection nor from complications during or after infection of the COVID-19 virus.

Before being quarantined for the virus, I had a shortness of breath, body aches, and a dry/cracked nose cavity with some bleeding. Which I thought had to

do with allergies, lack of movement due to the lock-down and me attempting to get back to a little physical activity, as slight shortness of breath and aches are common at the beginning of exercise after a lay-off period.

By the time I went to quarantine, I was only experiencing shortness of breath and a cough, but shortly after being deemed "recovered" by the medical staff, I have been experiencing once again dry/cracked cavities of the nose accompanied by nose bleeds roughly once a week, shortness of breath during any activity, elevated heart rates for no reason, complications with my irritable bowel syndrome, and extreme burning sensations that wake me up at night, in my lungs, esophagus, throat, and nose, especially after exercise.

Before COVID, having never ran more than a couple of miles at a time and after 7 months of lay-off from any exercise or running, while at FCI Butner, I decided to train to run a marathon. Within 3 months of training, I succeeded in running that marathon. After that, I became an avid runner and since being at FCI Loretto, I have ran distances between 3 and 15 miles at a time, a couple times a week.

Since contracting COVID-19, and after 3 months of attempting to train 3 times a week, I get out of breath

within a third of a mile and have to stop running after one mile due to being so out of breath I am experiencing chest pains and tunnel vision. The next couple days after a run, the complications I have been having are even worse.

After 14 years of exercise, coming back after multiple lay-offs, and training for and completing a marathon within 3 months, I know how my body reacts to physical exertion. Due to COVID-19 infection, my health has already suffered.

I informed medical of my condition and the complications I have been experiencing. I was notified that I would be placed on a list to see a physicians assistant as scheduling permits and that I have a Chronic Care Clinic appointment scheduled for March of 2021 (4 months from now), stating that my condition is "non-acute."

I now ask the courts to reconsider granting my motion for compassionate release and order my sentence to be reduced to time served or that the 24 months (18 months until home confinement) remaining on my current sentence be served on home confinement at my residence in Bremen, Kentucky, due to the following reasons:

1) The virus is not only back, but is spread throughout the institution in which I am confined to, showing FCI Loretto does not have the virus effectively controlled;

2) It has been over 90 days since my first infection, leaving me at risk of a second infection. I can better isolate and social distance myself at home than I can in my current environment, protecting me from a second infection.

3) I can receive better medical treatment for my current complications, as well as future complications, due to contracting the COVID-19 virus, at home than I can while incarcerated, as is shown by the medical staff response to my request for medical attention.

4) Due to my on going conditions and the fact that I have already contracted COVID-19 once, I am at an even greater risk of severe complications if I were to contract the virus a second time. (See United States v. Greenhut, 2020 U.S. Dist. Lexis 98568; also study at medrxiv.org/content/ 10.1101/2020.10.14.20212720v1)

Respectively Submitted,
Larry Smith
November 25, 2020

Larry Smith
Fed. Reg. # 08520-027
FCI Loretto
P.O. Box 1000
Cresson, PA 16630